**KUTNER–JONES DEVELOPMENT CORPORATION, Appellant,**

**v.**

**FIDELITY TITLE COMPANY, Appellee.**

**No. 19526.**

Court of Civil Appeals of Texas, Dallas.

May 26, 1978.

Michael Lowenberg, Akin, Gump, Hauer & Feld, Dallas, for appellant.

Edward J. Drake, Brady, Drake & Wilson, Dallas, for appellee.

GUITTARD, Chief Justice.

This suit was brought by Kutner-Jones Development Corporation against Fidelity Title Company to recover $122,000 alleged to have been improperly paid by Fidelity out of the proceeds of a loan to Kutner-Jones. The trial court granted Fidelity's motion for summary judgment, and Kutner-Jones appeals, contending that fact issues are raised with respect to Fidelity's violation of its escrow instructions and its negligence in making the payment. We hold that the summary-judgment proof fails to establish the absence of fact issues in these respects. Consequently, we remand the case for trial.

Kutner-Jones alleges in its petition that it entered into an agreement with J. H. Jones and Whispering Oaks Development Corporation to acquire the assets of Whispering Oaks; that the agreement provided "that in consideration for such acquisition, Kutner-Jones Development Corporation would re-finance certain obligations of Jones and Whispering Oaks which were secured by the property in question which was a certain tract of land in Dallas County;" that Kutner-Jones made an agreement to borrow from National Bank of Commerce a sufficient amount to finance the acquisition and provide additional money for Kutner-Jones' business; that Kutner-Jones entered into an agreement with Fidelity Title Company wherein Fidelity agreed to act as escrow agent in closing the loan transaction; that when the loan was closed, National Bank of Commerce furnished to Fidelity loan proceeds in the amount of $460,000; that Fidelity wrote a check on its escrow account payable to Mercantile National Bank in the amount of $172,000 and improperly delivered it to J. H. Jones, who deposited it to the account of Whispering Oaks at the Mercantile National Bank; that Whispering Oaks subsequently drew $122,000 out of the account and used it for its own purposes; that the disbursement instructions obligated Fidelity to pay out the proceeds of the loan only to the

extent necessary to obtain a release of the lien from Mercantile National Bank sufficient to enable National Bank of Commerce to obtain a first lien deed of trust on the property; and that Fidelity's disbursement of this $122,000 to Jones was a breach of Fidelity's fiduciary responsibility and contractual obligation to Kutner-Jones and also a failure to use reasonable care in disbursing the proceeds of the loan.

Fidelity's motion for summary judgment is based on the affidavits of Lynn Nicholson, its closing officer, and Charles Dees, vice president of Mercantile National Bank. Fidelity acknowledges that it "had a fiduciary duty to disburse the amount of dollars necessary to place National Bank of Commerce in a first-lien position—no more and no less," but contends that the summary-judgment proof establishes that it did exactly that by making a proper inquiry concerning the amount Mercantile required to release its lien and paying out the $172,000 that Mercantile demanded.

Kutner-Jones argues that even though the indebtedness of Whispering Oaks to Mercantile may have been as much as $172,000, that entire amount was not required for a release of the lien on the property in question because the deed of trust securing this indebtedness covered also a tract of land in Collin County not included in the sale from Whispering Oaks to Kutner-Jones and that Mercantile was willing to accept and did accept a substantially smaller amount for release of the lien on the Dallas County land, thus permitting Whispering Oaks to obtain and convert to its own use a portion of the proceeds of the $172,000 check. Kutner-Jones asserts that Fidelity failed to comply with its instructions in that it asked the entire amount of the indebtedness rather than the amount required for a release of the lien.

We conclude that the summary judgment evidence is subject to the interpretation advocated by Kutner-Jones. Nicholson's affidavit states that he requested of Mercantile "the payoff balance required by Mercantile in order to release those properties located in Dallas County from Mercantile's deed of trust," and that he was advised by Mercantile's vice president Dees "that the payoff balance required in order for Mercantile to release its lien on the property involved was $172,000." This statement, however, is not corroborated by Dees. Dees states that before Mercantile received the check for $172,000, Fidelity "had asked the amount of the debt of Whispering Oaks," and that, in response to that inquiry, "[t]he $172,000 figure was quoted to the title company." Thus, Dees does not state that $172,000 was the amount Mercantile required for a release of its lien on the Dallas County property, or that he told Fidelity that Mercantile would require that amount for such a release. Consequently, a fact issue may exist as to whether Nicholson simply asked the wrong question, and that a different response might have been elicited if he had asked the question in accordance with Fidelity's instructions from National Bank of Commerce.

The record does not disclose what Dees would have responded if Nicholson had asked how much Mercantile required for execution of the release on the Dallas County property. Dees stated in his affidavit that Mercantile did execute a release of the Dallas County land to Whispering Oaks, but he does not state the amount paid by Whispering Oaks for such release. The release itself is in evidence. It does not show the amount paid by Whispering Oaks, but recites a "partial payment" of the $150,000 note, and expressly stipulates that it releases only the property in Dallas County and does not impair or affect Mercantile's lien with respect to the property in Collin County. Thus, the summary-judgment proof establishes that Mercantile did in fact release the property in question from its deed of trust without requiring Whispering Oaks to pay the full amount of the indebtedness, and this evidence provides circumstantial support for Kutner-Jones' contention that if Nicholson had asked the amount required for a release of the lien on the land in question, instead of the amount of the indebtedness, Dees would have responded with an amount somewhat smaller than $172,000.

Fidelity argues that since the Dees affidavit states that Mercantile received the $172,000 check, which was payable to its order, Fidelity committed no breach of its instructions by delivering it to Jones. Though Mercantile may have received the check, that fact would not excuse Fidelity from its error in failing to determine the proper amount required for a release of the lien. Moreover, the summary-judgment proof does not show how Mercantile applied the proceeds of this check. Thus, we do not know how much was applied to the indebtedness of Whispering Oaks, or whether some of it was credited to the checking account of Whispering Oaks, as Kutner-Jones alleges. Neither is there any proof that Whispering Oaks did, or did not, withdraw any of such funds for its own use. So far as the summary-judgment evidence shows, Jones and Whispering Oaks may, indeed, have been able to make off with $122,000 of the loan proceeds, as Kutner-Jones alleges.[1]

■ Although the record does not show what instructions Fidelity had concerning disbursement of the loan proceeds above the amount required to satisfy the liens and expenses of the closing, the record clearly implies that it was obligated to pay any balance to the borrower, Kutner-Jones. Since the summary-judgment proof fails to establish as a matter of law that Fidelity paid no more than the amount required to satisfy the lien, Fidelity has failed to establish as a matter of law that it complied with its instructions. It has also failed to establish as a matter of law that it used reasonable care to determine the amount necessary to satisfy the liens.

■ Fidelity urges an alternative ground for affirming the summary judgment in its favor. It asserts that Kutner-Jones has made an election of remedies in previous litigation with J. H. Jones and other parties in that it made a claim in that litigation against Jones for converting the same funds that it now alleges Jones was improperly permitted to make off with because of Fidelity's failure to follow its escrow instructions. The pleadings in that litigation are included in the present summary-judgment proof. On examination of those pleadings, we conclude that no election has been made. The facts alleged in Kutner-Jones' claim against Jones are entirely consistent with the facts alleged in its petition in this case. If Kutner-Jones had actually recovered a judgment against Jones in that case and Jones had paid it, then, perhaps, Kutner-Jones would already have been compensated for the loss it now alleges. The present record shows, however, that the earlier suit was dismissed for want of prosecution. Consequently, we find nothing in that suit that would support the summary judgment in the present case.

Reversed and remanded.

1. We note that Kutner-Jones alleges that the agreed consideration for its purchase of the properties in question was that Kutner-Jones "would re-finance certain obligations of Jones and Whispering Oaks which were secured by the property in question, including a secured loan made by Mercantile National Bank of Dallas." The affidavit of Jonathan Kutner states the agreement in these same terms. This allegation may be subject to the interpretation that Kutner-Jones was obligated to pay the entire balance of the indebtedness to Mercantile, rather than only the amount Mercantile required for a release of the property in question. If Kutner-Jones was obligated to pay the entire amount of the indebtedness, then perhaps Kutner-Jones would have no reason to complain that Fidelity enabled Whispering Oaks to use the $172,000 check to discharge the entire $150,000 note held by Mercantile, together with any other indebtedness from Whispering Oaks to Mercantile, regardless of what instructions Fidelity may have received from National Bank of Commerce. No such contention, however, is raised on this appeal.